Joyce **FRAZIER**, et al., Plaintiffs,

James **JEFFERSON**, Roosevelt Roberts, and Barbara Steadmon, Plaintiffs–Appellants,

v.

**FORD MOTOR COMPANY; Local 862, International Union of United Automobile, Aerospace and Agricultural Implement Workers of America; and Kenny Yates, Defendants–Appellees.**

No. 03–5027.

United States Court of Appeals, Sixth Circuit.

Aug. 19, 2004.

Aubrey Williams, Louisville, KY, Plaintiffs–Appellants.

William D. Grubbs, Raymond C. Haley, III, Donna K. Perry, Woodward, Hobson & Fulton, Louisville, KY, Lisa C. Jern, Allegra J. Lawrence, Thomas G. Reynolds, IV, Sutherland, Asbill & Brennan, Atlanta, GA, for Defendant.

Connye Y. Harper, Associate General Counsel, International Union, UAW, Detroit, MI, Herbert Segal, Segal, Stewart, Cutler, Lindsay, James & Berry, Louisville, KY, for Defendants–Appellees.

Before DAUGHTREY and CLAY, Circuit Judges, and MCCALLA,* District Judge.

PER CURIAM.

James Jefferson, Roosevelt Roberts, and Barbara Steadmon are three of 16 plaintiffs who filed suit under the Kentucky Civil Rights Act, Ky.Rev.Stat. Ann. §§ 344.010–344.990, against the Ford Motor Company, against Local 862 of the International Union of United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), and against Kenny Yates, the building chairman of Local 862 at Ford's Louisville Assembly Plant. In their complaint, Jefferson and Roberts alleged that the defendants discriminated against the two men, both African–American, based upon their race when neither of them was selected by the union to serve as an international representative. They further alleged that the union's decision not to appoint them to the position was made in retaliation for the men's work to eradicate racial animosity and discrimination in the workplace. Steadmon asserted that the use of sexually- and racially-offensive language in the Louisville plant created a hostile work environment in contravention of the protections afforded by

---

* The Hon. Jon Phipps McCalla, United States District Judge for the Western District of Tennessee, sitting by designation.

Kentucky anti-discrimination law. She sought redress against the UAW, however, because the labor union refused to represent her in her efforts to challenge the allegations of racially-based and sexually-based employment discrimination.

The district court granted summary judgment in favor of the defendants on the claims of all three plaintiffs. As to Steadmon, the district court correctly found that her state-law claims were pre-empted by the Labor Management Relations Act, 29 U.S.C. § 185, because they were tantmount to claims that the union breached its duty of fair representation. Such claims are governed by federal labor law standards and legal principles, including the six-month statute of limitations and the duty ro exhaust internal union appeals. As a matter of law, Steadman's claims were barred by her failure to exhaust these internal appeals. There is no evidentiary basis for Steadmon's argument that further appeals would have been futile.

As to Jefferson and Roberts, the court found that they had failed to make out a prima facie case of discrimination because they did not apply for appointment to the position of international representative. The district court recognized that there were no formal procedures to follow in seeking appointment to the union post, which was made by a regional vice-president based on personal knowledge, recommendation by regional or local union officials, or self-recommendation. Here, each of the two plaintiffs had individually expressed interest in a future appointment as an international representative of the union, but in one case the expression of interest occurred four or five years before the position at issue here became available; in the other case it was more than a year earlier. The district court held that although the plaintiffs could normally rely on informal expressions of interest, they had failed to make their continuing interest known in a timely fashion in this case, and that "[w]ithout such evidence of an expression of interest, it is problematic to say that Defendant considered and rejected Plaintiffs on the basis of race."

We are not persuaded that summary judgment was proper on this ground, given the unstructured nature of the selection process and the fact that self-nomination was not a requirement for appointment to the international representative position. Moreover, the fact that the union (according to the testimony of Ron Gettelfinger) actually considered both plaintiffs for the position shows that the plaintiffs' purported failure to apply was not the basis of the union's actions.

The district court also held that even if the evidence could be taken to establish a *prima facie* case, the defendant had proffered legitimate non-discriminatory reasons for not appointing either of the plaintiffs to the position in question. The union consistently maintained that the choice of an international representative was based on four criteria:

1. Member in good standing of UAW;
2. Demonstrated ability for leadership;
3. Demonstrated willingness to support, advance and carry out all International Union and Local Union policies and procedures; and
4. Special needs within the Region or department including but not limited to, for example, gender, diversity and familiarity with specific collective bargaining agreements.

The record evidence shows that the key decisionmaker was Ron Gettelfinger, the Director of Region 3, who recommended individuals for international representative positions to the regional vice president, who made the formal selection. Gettelfinger was concerned that Roberts, who held a health and safety representative

position, was functioning outside his appointed capacity by getting involved with the processing of grievances, a task within the purview of the committeemen. Gettelfinger was also concerned that Jefferson refused to take direction from Building Chairman Kenny Yates. According to Gettelfinger, these shortcomings disqualified both plaintiffs under the third criterion.

The union's burden to articulate nondiscriminatory reasons for the plaintiffs' non-selections is extremely light. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("The defendant need not persuade the court that it was actually motivated by the proffered reasons."); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (holding that for the defendant to satisfy its burden of articulation it need only introduce evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action") (emphases in original). Despite the arguably subjective nature of the union's reasons, we conclude that it established a legitimate, non-discriminatory basis upon which it refused to appoint the plaintiffs to the international representative position.

It was then up to the plaintiffs to demonstrate that the reasons put forward by the union were pretextual, which the district court found that they had failed to do. We agree with the outcome reached by the district court, though for different reasons. Other than characterizing the union's articulated reasons as subjective, vague, and self-serving, the plaintiffs have marshaled virtually no evidence to dispute them.

The fact that Roberts, and to a lesser extent, Jefferson, assisted fellow employees in bringing race discrimination grievances does not, in itself, create a genuine issue of material fact of race discrimina-tion. Although neither of the plaintiffs was appointed to the position of international representative, the international union had appointed numerous African-American members to high-ranking positions within the organization. Not only had the UAW named ten African-American members to international representative seats in Region 3 alone, but five of those ten individuals received their appointments in the four years prior to the filing of this complaint, and a sixth person was appointed an international representative from Region 3 less than eight months following the lodging of these charges of discrimination. Furthermore, Ron Gettelfinger, the regional director who recommended many of the persons selected from Local 862 to be international representatives, actually appointed both Jefferson and Roberts to their representative positions as committee heads within the union structure, and he had nominated other African-Americans outside of Local 862 for advancement within the international union. Moreover, the plaintiffs have adduced no evidence of racial discrimination on the part of the regional vice president who actually selected Local 862's international representative, Ernest Lofton, himself an African-American, or on the part of other union officials who have made recommendations to Lofton regarding members who could potentially fill those positions. Under these circumstances, no reasonable jury could conclude that the union's stated rationale for its employment decision was a mere pretext for illegal discrimination.

For the reasons set out above, as well as those articulated by the district court in its memorandum opinion entered on October 29, 2001, we AFFIRM the order of that court granting summary judgment to the defendant, Local 862 of the UAW.